v. Federal Check Processing Incorporated. Good morning, Your Honors. I have the same problem, Your Honor. Extraneous, noise is not good. I came from Buffalo, Your Honor, and I guess it's typical of where they don't think too much of us, I suppose, but we get used to it after a while, Your Honor. Your Honors, I represent Mark Brandy, against whom summary judgment was granted by magistrate judge and adopted by the why we believe that the . . . One introductory interruption. I hope sometime before you're finished, you will specifically address the amount of the restitution. I will, Your Honor, and I can go into that now if you'd like, whatever you want to do. I get intended to. I'll try to watch the time, Judge, and try to keep it at that. As I get older, Your Honor, I think I see more straightforward and deviating from things is maybe a little bit more difficult. Bottom line is, Your Honor, that the magistrate judge looked at this case, I think, in a vacuum and did not consider a lot of information that he did have before him. The FTC had claimed that there were violations and wanted, at the end of the day, a judgment against Mr. Brandy and Mr. Moses, who is not part of my appeal, and against the corporate defendants. I only represent Mr. Brandy, and one of the things that the magistrate judge took into account was the fact that Mr. Brandy had not filed his response to the FTC's demand for certain admissions until the time he responded to the Mr. Moses appeal, if any. Did he abandon it? Did he bring it? Where are we on that? Your Honor, I can tell you. I can only tell you what I know. It's not part of the record, but if I can tell you, I shared it with Ms. Errington when we met earlier this morning. A couple of days ago, a few nights ago, I received a call directly from Mr. Moses. I did not represent Mr. Moses in the district court. Mr. Moses said to me that he had heard, and it might have been from either my client or from maybe his former counsel, that he heard that I was coming to New York to argue the appeal. He asked if I could represent him here today, and I told him I could not. That's all I have. Nothing has . . . as I understand it, Your Honor, the record indicates that his counsel moved to withdraw. I don't think that anything has taken place after that. I know that the appellant FTC is arguing that his appeal should be dismissed. I don't have much to say about that. That's fine. Okay. Thank you, Your Honor. As I was indicating, one of the things that the magistrate judge seemed to take into account, even though it was mentioned in a footnote, was that Mr. Brandy had not responded to the FTC's demand for certain admissions until the time that he responded to the summary judgment motion. In fairness to Mr. Brandy, what had happened here is that the FTC had served the demand for admissions. This is in part in the FTC's responding brief at footnote 7. What happened was, by agreement, the response was pushed back, and it was pushed back to some time, and it was an undesignated time, after the depositions had been completed. Not clear in the record when we received the depositions, but it was sometime after that that we responded. But, in fairness, it was within about three weeks after, and certainly within the 30-day period, that the FTC went ahead and filed the summary judgment motion. There was no motion by the FTC to preclude these admissions, unlike what they did with Mr. Moses. They actually filed a motion to preclude him from filing any responses to the demand for admissions. They did not do that with Mr. Brandy, and I would suggest they didn't do that, because there was an agreement and understanding among the parties and the court that this would be pushed back sometime to a later date. Is there a stipulation of that effect in the record? There is actually, well, there isn't. I think that the, it, page 24, footnote 7, this is actually in the responding brief, where they say that the FTC served its request for admissions on a certain date, discovery was supposed to end at a certain date, but was pending determination of the FTC's motion to compel the depositions. And then the depositions took place in August. We didn't get the, and the deposition was lengthy, and we didn't get the responses at that time. So, in retrospect, I wish that we had filed a response to their demand for admissions. We wouldn't have the issue here. But, in fairness, no motion was made to preclude. There was an understanding, I believe, that these would be filed at a time that Mr. Brandy responded to the FTC's motion for summary judgment. I don't think should preclude him from being in that position. With the response, the defense filed statements of material facts, which clearly indicated that Mr. Brandy stated that he had nothing to do with the illicit or He had indicated that he really had no supervisory position with the company. He worked on basically a daily or semi-daily basis. He would come in, make sure the supplies were taken care of and was given the money to deposit in the bank, and that's what he did. Mr. Brandy indicated that he had become very religious and  What were the findings of fact regarding Mr. Brandy? Well, what happened was the magistrate judge ultimately said that Mr. Brandy has denied, factually, he had denied his culpability specifically as to any specific acts that he made. The real finding of facts . . . Yes, why don't we just stick to that just for a moment. That was essentially a Was there a jury? We had no trial, Your Honor. This was a summary judgment motion. I'm sorry. Summary judgment motion. Fine. So everything is before the magistrate judge. All the facts are there on the basis of which the motion can be made. Right. Okay. And the magistrate judge made some findings that there were attempts illegally to collect a debt, and we actually said that . . . Were those facts in dispute? No, well . . . Really, what I'm aiming . . . The facts at this point are in dispute because, in part, there were some tape recordings that were made that were captured by the FTC, and there were some affidavits submitted. Our position has been that, under the residual exception of the hearsay rule, they shouldn't have been admitted at the summary judgment stage, but the bottom line is that the magistrate judge accepted them in making his determination. I'm just trying to understand what the magistrate judge did, in your view. Did the magistrate judge, in your view, effectively make findings of fact regarding Brandy? I don't believe that there were findings of fact that said Mr. Brandy knew what was going on, or was culpable, or had made any of these attempts, or had encouraged any of the employees to make these calls. So what was the basis for a finding of liability against Brandy? Well, he found that . . . and Mr. Brandy had indicated in his response that, to his knowledge, it wasn't accurate. He found some scripts were found . . . the magistrate judge found that some scripts were located . . . not to be redundant . . . were located in Mr. Brandy's desk. Mr. Brandy indicated that actually his desk was inside a room, that he didn't have a desk on the collection floor, but in any event, he said that nothing was found there. It was an issue of fact, but the magistrate judge, for reasons I'm not certain, decided against him and made a finding of fact that they were, in fact, found in his desk. What wound up happening . . . There was no finding that he personally violated the FTCA or the FDCPA, right? I believe that that's correct, Your Honor. So the question was whether he could be held liable for the corporate defendant's practices, right? Yes, Your Honor. Well, I would say it in a different way, Your Honor, and I apologize. I would say that what the magistrate judge did was to make a basic finding, and this is again at the summary judgment stage, but the magistrate judge made a finding that he felt that Mr. Brandy was at the very least guilty of some conscious avoidance and put his head in the sand as to what was going on, even though he recognized that Mr. Brandy had continuously denied any culpability with respect to what was happening. And he also made a finding that along those lines was that there was an assurance of discontinuance, which was in effect prior to the dates that were part of the complaint between Mr. Brandy, Moses, and the Attorney General's office. And he said that because Mr. Brandy had signed and had been part of the assurance of discontinuance, that somehow he must have known what was going on, even though there were, in my opinion, no specific facts that he could rely on. There were admissions, were there not, in the record that he admitted in the interrogatories of the Federal Trade Commission? He admitted to serving as a director, right? That's correct, Your Honor. Co-director, correct? That's correct, Your Honor. General manager? That's correct. And co-general manager, right? That's correct. Of 12 out of the 13 corporate defendants, correct? I'm not sure if there was that many, Your Honor, but there were some admissions that he made, certainly during the deposition that he had, at least previously had that position. That's part of the record on the basis of which the magistrate decided this case? I think it is. I'm sorry, Your Honor. I think it is. I think it was part of the depositions. And as we indicated in the brief, we didn't deny that. But we're saying that . . . And you didn't deny that he held a 50 percent ownership stake in those companies? I think that varied from time to time based on his deposition, Your Honor. But the bottom line was I think that there was some evidence that he indicated that he had some ownership interest in some of the companies. I don't doubt that, Your Honor. But the question is whether, because of that interest, he should himself be liable for a $10 million judgment, which I think was Judge Sack's initial question that you were looking for. You know, in this case . . . and I should add just very briefly, we had asked in response to the FTC's motion for summary judgment, we had asked for more time to complete discovery. And the magistrate judge did not really address that, but he didn't grant it, and we went further and he made the determination. And that's important because what wound up happening here, if you look at what the FTC put before the court, they put before the court the worst that they had or the best that they had, the worst for the defendants in this case. And those were phone calls that were made that we have conceded that to some extent were inappropriate and violated the FTCPA. We don't doubt that for a minute. But the problem here is that from those limited few phone calls that were made, and some tape recordings that they took from the premises, we counted up 45 or 50, maybe a few more, out of four years and $10 million worth of recovery, the magistrate judge made a finding that this was pervasive. And he has to have a basis to say that. And I believe that he made a conclusion based upon what he might have had before him, even though we had indicated, Mr. Brandy had indicated, that a compliance officer had been hired, that to his knowledge, every single communication had been tape recorded to make sure that this was not going on. And what the FTC pointed to was, well, out of the 26 or so cubicles, 15 or so or 12 or so had these scripts contained in their desks or on their desks. But respectfully, I don't believe, and I never did believe, and I still don't believe, that that in and of itself should have enabled the magistrate judge and the district judge to find that this was so pervasive that every single phone call that had been made was illegal, was in violation, and was collected unlawfully. There's no proof in the record. And that really was the burden. But what happened here is the FTC and the judge sort of shifted the burden to the defense. And we had asked for additional discovery because we wanted to find these tape recordings. There was all kinds of problems. I know it was a matter before the magistrate judge earlier, before Judge Scott, but there was an issue of trying to get these tape recordings so that we could hear whatever recordings there were, but we were cut off because of the FTC's motion for summary judgment made when it was. I've given you a lot of extra time. I know you have. It's fine. We're delighted to do it. And you'll have two minutes for rebuttal, but I have a question finally, a rather simple one perhaps. What exactly are you seeking from us? What's the decree of this court? What would you want, if you succeeded, what do you want? We're hoping, Your Honor, that the court will overturn the finding of a total summary judgment, that the court will return it to the district court for a trial, for further discovery, for a trial, and at the very least. Further discovery? As to the tape recordings that we feel are an issue with respect to the issue of the pervasive basis of the court's finding as to the damages. Did you object in the district court regarding the purported inadequacy of discovery? We did, Your Honor. The first thing that we mentioned in our responding papers was we asked for additional discovery. It was the first thing that we said right out in the open that we asked that we be given additional discovery, but . . . You asked the magistrate judge for that? That's correct, Your Honor, in our responding papers. And I think, as a matter of fact, it was mentioned in our papers . . . So if you . . . With respect to the issues of material facts, that's correct. Right. So if you prevail here, what you want us to do is to remand to the district court to permit further discovery on the question of the liability of the individual client, and how much discovery would that involve? My guess, Your Honor, I would think . . . Well, we have to find out what's left over, Judge. There was an issue in this case as to . . . But we can't go into very much more than this. We just want to know what it is that would happen if we ruled in your favor. Allowing us to obtain the documents and the tape recordings which were taken . . . which were seized from the business, which were seized from . . . And who has them? Well, at this point in time, Judge, I don't know. The receiver had access to them. I can't tell you whether Mr. Brown still has them or has access to them or even knows where they are, but we'd certainly sure like to try to find out if we can . . . How much time would you need to do that? I would guess a month, Your Honor, 45 days tops. It really isn't all that complicated. And then, in your view, you can proceed to some sort of evidentiary hearing or trial? It would be a trial, Your Honor. I don't think there would be any motion to suppress or anything like that. So, I believe it would be a trial. At the very least, if the Court found that the general granting of the summary judgment was appropriate, we certainly would like to have a hearing as to the amount of damages that the magistrate recommended. If you don't prevail, you want a remand for a calculation of the damages? That's correct, Your Honor. All right. Thanks very much. Thank you, Your Honor. Ms. Arrington? Good morning, Your Honors. May it please the Court, Michelle Arrington for the Federal Trade Commission. I just want to start with where we left off, the claim of inadequate discovery, objection to that. There was no objection to or there was no claim specifically made to the magistrate judge, to the district court of an inability to proceed with . . . inability to process, a very oblique reference to not having enough information in the objection, Mr. Briandy's objection to summary judgment. The defendants had a year to conduct discovery. That was a time frame that they proposed. During that whole entire time frame, never once did any of the defendants, including Mr. Briandy, say, we want to have the materials that were taken from our offices to review them. That is routinely something that defendants can do and do do in our cases. They never approached the FTC. They never tried to contact the court to pursue this avenue. As we discuss in our brief, as Rule 56D requires, there needs to be an affidavit that supports a request for additional discovery in this context, that explains why they were unable to do this. They have not . . . they never submitted that. And the precedent of this Court says that that is ample reason to reject those kind of arguments. On the merits . . . While you're at it, on the question of Moses' role here, your position is that he has not pursued his appeal and that should be dismissed for lack of prosecution. Yes, that is our position, Your Honor. On the merits of Mr. Briandy's appeal, the fact that there were violations by the corporate defendants operating as a common enterprise is not disputed. Mr. Briandy has disputed his role in this. However, notwithstanding his general denials and his denials of knowledge of what was going on by his really relate to the time period after the assurance of discontinuance. If you look at his deposition, which is what he is relying on in support of his appeal, he consistently says that the last year, year and a half, is when he collection activities and from the complaints that were properly considered by the magistrate judge. Mr. Briandy himself is identified as one of the individuals for the corporate entities that was engaged in the deceptive and authority in our cases for imposing personal liability in these circumstances? Yes, Your Honor, absolutely. First of all, there were independent claims of deceptive practices in violation of the FTC Act. Those claims in and of themselves support under FTC Act standards that this Court has applied. The statute and both of these statutes provide for individual liability? The FTC Act, the FTC Act's well-established standards authorize imposition of direct participation or authority to control and knowledge. There's direct statutory language to that effect? That is not direct statutory language. Those are from cases that have... Federal common law. Federal common law, exactly. And the FDCPA in the provision that authorizes FTC Act enforcement says that violations of that subchapter, which includes deceptive practices and some additional practices, will constitute unfair and deceptive violations. That statute provides for personal liability? That statute allows for the FTC to bring actions using its full authority and for the Court to treat those violations as FTC. Includes the imposition of individual liability? Yes, Your Honor, that is correct. But all of that is based on case law. Other circuits presumably have adopted that body of, that principle? Yes, Your Honor, in the context of FDCPA and considering... We haven't done that, right? You have not done that. And actually, I will mention that in preparing for this argument, I identified an additional case that was decided after the submission of the briefs. The 11th Circuit in a case called, and I will just find it very quickly, called Primary Group. Although unpublished, it's 713 Federal Appendix 805 specifically held that. Why don't you do this? Why don't you send this to one of the proverbial 28... I would be happy to do that. You attach that and why don't you do that by close of business tomorrow? I will certainly do that. Oh, not a proverb. Now, Your Honor, the question here then, Mr. Briandy has, and the unrebutted evidence in this case... Let me go back to Mr. Moses for a moment because that would help me understand how you are operating or the agency is operating. So we're going to dismiss his under local rule 31.2 paren small d. What happens then? Tell us what the liability of Mr. Moses will be as a result of the termination of proceedings in this way. That he will be held jointly and severally liable for the amount, the full amount of the judgment. How much is it? $10.8 million, Your Honor. So Mr. Moses will have a judgment entered by the district court for $10.2 million. Yes, Your Honor, and we have no expectation that the FTC is going to get remotely that. Right now, there's approximately $500,000 in seized assets that have been frozen. There may be additional assets . . . For both of these? For both. This is for the corporate entities. Now, if there's a judgment that is affirmed, whether for Moses by dismissal of his appeal or affirmance against Mr. Briandy by this court, then the FTC will have the opportunity to see whether there are additional assets that it can collect against. But by no means is it going to be anything approaching $10.1 million. It's probably not going to be very much above what we already have frozen. But I would like to get back to a couple of points that Briandy's counsel has mentioned. First of all, he hasn't been precluded in challenging in any way and in finding any evidence or presenting any evidence in any way that might undermine the court's finding that the violations in this case were pervasive. He had the opportunity. He has never pursued it. The evidence of this case found throughout the call center at 15 of the collection desks, 21 of the 25 collectors, including three managers, were caught on tape engaging in these deceptive practices, making threats to extort payments. There is no real dispute, and the FTC's evidence is unrebutted, that Mr. Briandy himself was involved in a day-to-day basis with the collection activities until approximately the last year, year and a half, which coincides with the state of New York's entering into an assurance of discontinuance with Mr. Briandy signed as an owner and operator of the collection business, which amply put him on notice as of that date, to the extent there was any doubt before, that there were repeated and persistent violations by the collection business of the FDCPA, and Mr. Briandy signed that assurance of discontinuance and a subsequent affidavit that put him under the obligation to ensure compliance. And under the FTC Act standards for personal liability for the violations of corporations, it's a two-part test. One is authority to control, which Mr. Briandy unquestionably did. He may not have exercised that control, but he had authority and knowledge. And having an awareness of a high probability of fraud, which Mr. Briandy unquestionably did, and then sticking your head in the sand, an intentional avoidance of the truth, there is no getting around that in this case here. Okay. We have your arguments in your briefs, which we appreciate. So let's have Mr. Greenman do his two minutes of rebuttal. I'll take less than that, Your Honor. Even better. Thank you, Your Honor. First of all, Your Honor, $10.2 or $10.8 million is a lot of money, and I think that the FTC sort of poo-poos what effect it's going to have on him today, but of course it'll live with him for the rest of his life, no telling what he may have, what he may come into. But the bottom line, I think it's a little bit unfair to say, well, it's not going to really affect him, so let's leave it at $10-point-something million. With respect to his involvement, all I can say to the Court is this. I could understand if the Court made a specific finding of that he knew what was going on, but the Court was stuck with his protestations that he did not know what was going on, that he did not participate day-to-day. So the magistrate judge, instead of making these findings, jumped and said he put his head in the sand. With all due respect, that's an issue that I don't believe the Court should find for purposes of summary judgment. That's an issue that I think that should be determined after a full evidentiary trial. Giving everybody the opportunity to come forward as to what he knew, what he didn't know, and simply relying on something that happened some years before this, before this time that we're talking about here, certainly isn't fair to him to say that he stuck his head in the sand. When there was really no proof that he did, he said, I just wasn't involved the day-to-day basis. I didn't have the kind of influence. I didn't know that any of these phone calls were being made. I certainly did not make any of these phone calls myself, nor did I prepare a script. Thank you. I may have gone over my one minute. That's okay. We'll reserve the decision.